FARMER, J.
 

 As the marriage is being dissolved, he is about to leave for prison because of his conviction for battering her. The issue is child support, whether his criminal conviction and resulting incarceration is a valid reason to deny setting an amount of support attributable to him based on imputed income. We hold it is not and reverse the final judgment.
 

 In petitioning for dissolution of marriage, the mother requested sole parental responsibility and both temporary and permanent support for their two minor children. As temporary support the trial court ordered the father to pay $551 biweekly for the two children plus an additional $20 bi-weekly retroactive support based on his then net monthly income of $3,495.
 

 
 *122
 
 When the case later came up for final determination, the father had been convicted of domestic violence against his wife and was scheduled to be sentenced. The trial court found that it was in the best interest of the minor children that she have sole parental responsibility because of his violence and resulting prison sentence. But the court declined to make any provision in the final judgment of dissolution of marriage for his share of child support, stating he had no monthly income. She moved for rehearing arguing it was necessary to establish his share of child support. The court denied her motion, again on the basis that he “is in prison and has no income.”
 

 Because there was no transcript of the final hearing, she filed a statement of evidence, and he filed a response. The court entered an order stating that the final hearing took place in late April of 2008 and that it declined to impute income to the father to calculate child support because:
 

 “the Respondent was on his way to prison and unemployed. In light of the lack of contribution toward child support expected from the Father, the Wife was awarded whatever marital property existed and sole responsibility for the children. ... When people are released from prison they are encouraged to find work. In order to find and maintain work they need to get a driver license. If there is a large accumulated child support debt they cannot get a license. This situation is to be avoided if possible.”
 

 The principal issue here is whether a trial court can properly decline to set a specific amount of child support due from an incarcerated parent without current income or assets while imprisoned.
 

 Section 61.30(2)(b)
 
 [1]
 
 governs the imputation of income for purposes of child support:
 

 “Income on a monthly basis
 
 shall he imputed to an unemployed or underemployed parent when such employment or underemployment is found by the court to be voluntary on that parent’s part,
 
 absent a finding of fact by the court of physical or mental incapacity or other circumstances over which the parent has no control. In the event of such voluntary unemployment or underemployment, the employment potential and probable earnings level of the parent shall be determined based upon his or her recent work history, occupational qualifications, and prevailing earnings level in the community .... ” [e.s.]
 

 In
 
 Mascola v. Lusskin,
 
 727 So.2d 328, 333 (Fla. 4th DCA 1999), we held that child support obligations may not be modified where a decrease in income resulted from payor’s conviction for attempting to kill the mother in order to eliminate such support. Although in the present case there is no evidence that he committed the crime to avoid his support obligation,
 
 Mascóla
 
 is authoritative:
 

 “The mere fact that while imprisoned the obligor will not be able to make actual payment of the support arising from the income imputed to him, and therefore may not be held in contempt for failing to do so,
 
 see Bowen v. Bowen,
 
 471 So.2d 1274 (Fla.1985), hardly justifies eliminating or reducing the basic support obligation itself. We thus distinguish fixing the monetary amount of the duty from the remedies for breach of it. His incarceration may relieve him from the use of contempt to coerce payment, but that is no cause to reduce the amount of the support where the failure to pay results from the pay-
 
 *123
 
 or’s voluntary conduct. The arrearages can continue to accumulate until the ob-ligor returns to the work-a-day world and begins to earn actual income. It will then be appropriate for the court to establish a payment plan to reduce or eliminate the arrearages in accordance with his income-earning ability. Most assuredly it would be in the children’s best interest to have the unpaid support payments grow in the expectation that one day the father will have the ability to make actual payment.”
 

 727 So.2d at 332-33.
 

 The Florida Supreme Court approved the
 
 Mascóla
 
 holding “that an incarcerated parent may not automatically have his or her child support payment obligations modified based solely on a reduction in income resulting from incarceration.”
 
 Dep’t of Revenue v. Jackson,
 
 846 So.2d 486, 494 (Fla.2003). It held that “the child’s interests are not served where the obligor parent is unable to fulfill his or her support obligations because there is no income while in prison.” 846 So.2d at 493. The court stated:
 

 “Under such circumstances, the child faces the hardship of simply not receiving the money he or she needs, regardless of whether the trial court modifies the incarcerated parent’s obligations. After the parent is released, however, the child is in a much better position if there is at least the possibility that not only will current support payments resume, but payment for an accumulated amount will be met — even if under a restructured payment plan. To the contrary, if we permit trial courts to suspend an incarcerated parent’s obligation to pay child support, the supported child will never receive the benefit of the support payments to which the child was entitled. Therefore, the child’s interests are certainly best served when courts do not modify an obligor parent’s child support payments simply because of the parent’s incarceration.”
 

 846 So.2d at 493.
 

 Jackson
 
 noted the prospects for finding employment by a parent just released from prison. Nonetheless the court made clear that:
 

 “such difficulties do not ... outweigh the burdens faced by a minor child who must do without monetary support from the incarcerated parent. Our primary concern is that the child receives the support to which he or she is entitled.
 
 Of secondary concern are the parent’s difficulties
 
 — largely
 
 self-inflicted
 
 — re
 
 sulting from incarceration due to criminal conduct unrelated to the support obligations.”
 
 [e.s.]
 

 846 So.2d at 493;
 
 see also Holt v. Geter,
 
 809 So.2d 68 (Fla. 1st DCA 2002) (affirming order directing defendant to pay child support despite argument that payment should be suspended until release from prison because unable to earn an income; applying Mascola).
 

 A child’s best interest is certainly not served by refusing to set an initial amount of support based on imputed income for a parent about to be imprisoned. We therefore hold that income should be imputed to the father so that the arrearages can accumulate until he is able to earn an income. When release occurs, the court should establish a payment plan to reduce arrearag-es according to his earning ability, setting a payment plan. On remand the trial court shall recalculate child support to reflect the father’s obligation for support by imputing income.
 

 Reversed.
 

 HAZOURI and DAMOORGIAN, JJ, concur.
 

 [1]
 

 .
 
 See
 
 § 61.30(2)(b), Fla. Stal. (2009).