IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

DENNIS MICHAEL WILKERSON,

      Appellant,

 v.                                        Case No.  5D16-1938

VICTORIA GLASGOW WILKERSON,

      Appellee.
_____/

Opinion filed April 21, 2017

Appeal from the Circuit Court
for Seminole County,
John D. Galluzzo, Judge.

Dennis Michael Wilkerson,
Butner, North Carolina, pro se.

Heather M. Kolinsky, of HMKLaw, P.A.,
Orlando, for Appellee.

PER CURIAM.

Dennis Wilkerson ("Father") appeals from the final judgment dissolving his marriage to Victoria Glasgow Wilkerson ("Mother"). The trial court awarded sole parental responsibility of the parties' minor children to Mother, granted her request to change the children's surname, and ordered Father to pay child support. Father raises a number of issues on appeal, only one of which merits discussion. He argues that the trial court abused its discretion in ordering him to pay child support.

Prior to the dissolution of marriage, Father was convicted of two counts of knowingly attempting to persuade, induce, and entice a person believed to be a minor to engage in illicit sexual conduct. He is currently serving a lengthy sentence in federal prison. The issue presented is whether the trial court abused its discretion by entering an initial child support order based on imputing income to Father, even though he is incarcerated.

Initially, we address Father's argument that his due process rights were violated because he was "blindsided" by Mother's request for child support at trial. Although Mother did not request child support in her petition for dissolution of marriage, contrary to Father's assertion, the request for child support was listed as an issue for resolution in Mother's pretrial statement. Likewise, Father's pretrial statement addressed the child support issue, indicating that he was presently unable to afford child support. Father does not argue that he objected to the issue of child support at trial; further, we do not have a transcript of the trial reflecting any objection. Thus, Father cannot establish that the trial court violated his due process rights in considering the child support issue. See Clark v. Clark, 147 So. 3d 655, 658 (Fla. 5th DCA 2014) ("When a pleading fails to make a specific demand, courts will accept the issue as being 'tried by implied consent' where a pre-trial statement raises the issue and the other party fails to object at the hearing.").

As to the child support order, this case presents an issue of first impression in our Court and an issue that has divided other jurisdictions.[1] Two of our sister courts have

---

[1] See, e.g., Drew A. Swank, Enforcing the Unenforceable: Child Support Obligations of the Incarcerated, 7 U.C. Davis J. Juv. L. & Pol'y 61, 63 (2003) (compiling authority and discussing differing jurisdictional approaches to setting or modifying child support obligations for incarcerated parents); Karen Rothschild Cavanaugh & Daniel Pollack, Child Support Obligations of Incarcerated Parents, 7 Cornell J.L. & Pub. Pol'y

considered the question and reached opposite conclusions. See Dep't of Rev. v. Llamas, 196 So. 3d 1267 (Fla. 1st DCA 2016); McCall v. Martin, 34 So. 3d 121 (Fla. 4th DCA 2010).

The Florida Supreme Court addressed the related issue of modification of a preexisting child support award in Department of Revenue v. Jackson, 846 So. 2d 486 (Fla. 2003). Specifically, the Court addressed "whether a court should permit a parent to have a preexisting support obligation modified or suspended based upon an inability to fulfill the financial support obligation during a period of imprisonment." 846 So. 2d at 488. The Court determined that an incarcerated individual is not entitled to an automatic modification based on a reduction in income resulting from the incarceration. Id. at 494. Rather, the Court held that: (1) an incarcerated parent may file a petition to modify the support obligation; (2) the trial court will hold the petition in abeyance throughout the period of incarceration; and (3) the "support installments, although still outstanding according to the original payment schedule, do not accrue as a vested interest of the child to be reduced to judgment which cannot be altered." Id. at 491.

Subsequently, in McCall, the Fourth District addressed whether Jackson applies to setting an initial support obligation for an incarcerated parent, based on an imputation of income. 34 So. 3d 121. In McCall, the appellant committed a domestic battery on his wife and was sentenced to prison for that offense. Id. at 121. The trial court declined to

531, 534 (1998) (discussing impact of incarceration on child support obligations, modifications of obligations, and considerations regarding changes in circumstances and ability to pay); Frank J. Wozniak, Loss of Income Due to Incarceration as Affecting Child Support Obligation, 27 A.L.R. 5th 540 (1995) (reviewing different state procedures for addressing, setting, and modifying child support obligations for incarcerated parents).

impute income for purposes of establishing an initial child support award because the appellant had no monthly income as a result of his incarceration. Id. at 122. In reversing, the Fourth District held that "income should be imputed . . . so that the arrearages can accumulate until he is able to earn an income." Id. at 123. The court held that upon release, the trial court should comply with the procedural guidelines set forth in Jackson. See id. ("[I]ncome should be imputed to the father so that the arrearages can accumulate until he is able to earn an income. When release occurs, the court should establish a payment plan to reduce arrearages according to his earning ability, setting a payment plan.").

Conversely, in Llamas, 196 So. 3d at 1270–71, the First District found that neither section 61.30(2)(b), Florida Statutes, nor Jackson require or permit the imputation of income to an incarcerated parent when the incarceration results in a present inability to pay child support. Rather, the court held that Jackson was limited to modification of support orders. 196 So. 3d at 1269–70. The court cited Justice Pariente's separate opinion in Jackson[2] and upheld an administrative law judge's refusal to impute income to an incarcerated parent. Id. at 1270–71. The court held that a trial court should not impute income to an incarcerated parent in order to set an initial child support obligation without a demonstrable ability to pay, or applicability of the doctrine of unclean hands. Id. at 1270–71 & n.2. In doing so, the First District certified conflict with McCall. Id. at 1271.

---

[2] In Jackson, Justice Pariente wrote, "The Department of Revenue . . . acknowledges that if the initial child support obligation is established at the time that the parent is incarcerated, then it would be error to impute income to that parent without showing an independent source of income." Jackson, 846 So. 2d at 498 (Pariente, J., concurring in part and dissenting in part).

The decision whether to impute income to an incarcerated parent in order to establish an initial child support obligation raises competing policy concerns—the obligation of a parent to provide support for his or her children versus an incarcerated individual's inability to pay. Although in most instances a parent without the ability to pay will not be ordered to pay child support, the child support guidelines allow for imputation of income if the evidence demonstrates that the obligor's "unemployment or underemployment is voluntary." § 61.30(2)(b), Fla. Stat. (2015).

We believe that an individual's actions that lead to incarceration are voluntary for purposes of the statute. See, e.g., Mascola v. Lusskin, 727 So. 2d 328, 332 (Fla. 4th DCA 1999) (holding father's conduct leading to incarceration was voluntary for purposes of chapter 61); see also Div. of Child Support Enf't, ex rel. Harper v. Barrows, 570 A.2d 1180, 1183 (Del. 1990) (affirming trial court's holding that "incarceration is a foreseeable result of criminal activity and does not ipso facto relieve one of the obligation to pay child support"); Koch v. Williams, 456 N.W.2d 299, 301 (N.D. 1990) (deeming appellant's incarceration to be "self-induced and voluntary"); Proctor v. Proctor, 773 P.2d 1389, 1391 (Utah Ct. App. 1989) ("[A]n able-bodied person who stops working, as an exercise of personal preference or as a result of punishment for an intentional criminal act, nonetheless retains the ability to earn and the duty to support his or her children."). We do not think that section 61.30 was intended to operate as a shield to avoid having an initial support obligation established while the parent is incarcerated. Indeed, "the duty to support one's children pre-exists other duties voluntarily assumed or imposed by law. It exists as a result of parenthood and came into force before any criminal conviction." Mascola, 727 So. 2d at 332.

The majority opinion in Jackson noted that a child's best interests are not served where the obligor "is unable to fulfill his or her support obligations while in prison." 846 So. 2d at 493. Jackson recognized the distinction between an award of child support and the practical limitations on the enforcement of that award when a parent is incarcerated. However, the court refused to categorically allow modification of support obligations based on an incarcerated parent's inability to pay. Id. at 494. Rather, the court formulated a procedure for addressing the modification of previously ordered child support during a prisoner's period of incarceration. Id. at 491.

It would be inconsistent to allow an incarcerated parent's child support obligation, which was set before incarceration, to continue to accrue until the parent's release from prison, and yet not allow the trial court to initially set a minimum amount of child support for an individual who is already incarcerated. To preclude an initial award of child support that would accrue during the period of a parent's incarceration would deprive a child of the support to which he or she is entitled.[3]

Accordingly, we hold that a trial court does not abuse its discretion in setting an initial child support obligation by imputing income to an incarcerated parent. We affirm the

---

[3] The facts of the instant case are illustrative. Father is currently serving a seventeen-year sentence in federal prison. Absent the imposition of an initial support obligation while he is incarcerated, the trial court would be precluded from awarding child support for the period of his incarceration if Mother was required to file the petition after his release. See, e.g., § 61.30(17), Fla. Stat. (allowing initial determination of child support to be awarded retroactively to date when parents no longer resided together, but limiting the time period for recovery to twenty-four months prior to filing the petition). In this case, each of the parties' children will be over the age of eighteen by the time Father is released from incarceration. See Larwa v. Dep't of Rev. ex rel. Roush, 169 So. 3d 1285, 1285 (Fla. 5th DCA 2015) ("Generally, a parent's child-support obligation ceases when the child turns eighteen."); Campagna v. Cope, 971 So. 2d 243, 249 (Fla. 2d DCA 2008) (limiting section 61.30(17) petition for retroactive child support to "those months within the preceding twenty-four months when the child was a minor").

6

trial court's decision to do so in this case; we align ourselves with the Fourth District in

McCall and certify conflict with the First District in Llamas.

AFFIRMED; CONFLICT CERTIFIED.

COHEN, C.J., and WALLIS, J., concur.
PALMER, J., dissents with opinion.

PALMER, J., dissenting.

I respectfully dissent because I disagree with the majority's conclusion that a trial court possesses the authority to impute income to an incarcerated parent when setting an initial child support obligation.

"[A] court cannot order a parent to pay child support which that parent cannot afford to pay." Alois v. Alois, 937 So. 2d 171, 175–76 (Fla. 4th DCA 2006). Section 61.30 (2)(b) of the Florida Statutes (2015) imposes upon the parent seeking to impute income to the other parent the burden to present substantial competent evidence that identifies the "source of the imputed income" based on available employment. As such, without a demonstrated ability to pay, a court is not authorized to impute income to an incarcerated parent when imposing an initial child support obligation. As this court held in Hogle v. Hogle, 535 So. 2d 704 (Fla. 5th DCA 1988):

> In order to impute income, the trial judge must find that the parent owing a duty of support has the actual ability to earn more than he or she is currently earning, and that he or she is deliberately refusing to work at that higher capacity to avoid support obligations.

Id. at 705. Similarly, in Waugh v. Waugh, 679 So. 2d 1 (Fla. 2d DCA 1996), the Second District reversed a child support order based on the amount that the father was earning prior to incarceration, stating:

A court may impute income to a party who has no income or is earning less than is available to him based upon a showing that the party has the capability to earn more by the use of his best efforts.

8

679 So.2d at 3 (internal quotation marks omitted); <u>see also</u> <u>Strassner v. Strassner</u>, 982 So. 2d 1224, 1225 (Fla. 1st DCA 2008); <u>Koeppel v. Holyszko</u>, 643 So. 2d 72, 75 (Fla. 2d DCA 1994).

I agree with the decision in <u>Department of Revenue v. Llamas</u>, 196 So. 3d 1267 (Fla. 1st DCA 2016), and with the decisions in other jurisdictions which have held that trial courts cannot impute income to an incarcerated individual absent a showing of the ability to pay. <u>See e.g.</u> <u>Lambert v. Lambert</u>, 861 N.E. 2d 1176, 1180 (Ind. 2007). (concluding that imputing income to incarcerated individual is improper, but allowing imposition of minimal support order as authorized by Indiana statute); <u>State v. Porter</u>, 610 N.W.2d 23, 29 (Neb. 2000) (concluding trial court abused its discretion in setting initial support obligation based on "earning capacity" that the appellant would not have during incarceration); <u>Lewis v. Lewis</u>, 637 A.2d 70, 73 (D.C. 1994) (vacating child support order of $50 per month for incarcerated father, noting his "income while in prison will be 'essentially nothing.' ").

In sum, absent a demonstration of ability to pay, the trial court lacks the authority to impute income for the purpose of establishing an initial child support obligation.